UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Jeffrey T. Long**, <br>                      Plaintiff, <br> vs. <br> **Idaho Rural Water Assoc., Inc**. <br>                      Defendant. | **Case No.  CV 05-303-S-EJL** <br> **MEMORANDUM ORDER** |

Pending before the Court in the above-entitled matter is Defendant Idaho Rural Water Association, Inc.'s ("IOWA") motion for summary judgment (Docket No. 12).  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**FACTUAL BACKGROUND**

On or about June 23, 2005, Plaintiff Jeffery Long ("Long") filed his Complaint in state court alleging his former employer, IOWA had breached a contract, violated Idaho wage laws, violated the Fair Labor Standards Act and discharged him in violation of public policy.  The matter was removed to Federal District Court by Defendant.

MEMORANDUM ORDER - 1

IOWA is a non-profit organization which provides training and technical assistance to the water and waste water systems with populations under 10,000 persons in the State of Idaho. Long was employed by IOWA from January 2001 to June 30, 2003 as IOWA's Director of Training. Long's supervisor was the Chief Executive Officer for the IOWA, Don Munkers ("Munkers"). Munkers hired Long. There was no written employment agreement between IRWA and Long Under Idaho law, Long is presumed to have been an "at-will" employee of the IRWA. On November 6, 2001, Long was provided a memorandum which indicated the IRWA believed he was an exempt employee under the Department of Labor Guidelines. Long never contested this exempt status determination by his employer and did not request overtime pay.

Long claims he also had an oral contract for compensation in addition to his regular salary. The alleged side agreement was for Long to provide "for fee training" and that he would be paid 50% of the proceeds from the training. Whether the parties reached an agreement is disputed and as is what definition of "proceeds" was to be used for this alleged side agreement – net proceeds, gross proceeds, or registration fees received. Long claims the terms of the side agreement wee reached during his interview for the Director of Training position. There was no discussion of the number of classes Long would present under the "for fee training" program. Long claims the first "for fee training" occurred in May 2001.

Munkers, who interviewed and hired Long, testified Long was compensated for the "for fee training" as part of his regular salary of approximately $37,000 to $40,000 per year. Long claims Munkers acknowledged the oral agreement to pay Long for the "for fee training" classes on a number of occasions and when he asked about getting paid, Munkers said he did not have the income and expenses data to calculate the amount owed or did not have the funds available to pay

MEMORANDUM ORDER - 2

him. Munkers claims he told Long he wished he could pay him for the "for fee training" but there was never a contract between the parties for additional payments to be made to Long for conducting the "for fee training."

Long's position was funded by a grant/contract with the National Rural Water Association. His position required him to perform a minimum of 300 hours of combined technical assistance and training and classroom training hours per year. The grant/contract prohibited the IRWA from charging a fee for the training Long conducted towards the 300 hours of training Long was required to perform under the terms of the grant/contract. Munkers was involved in selecting the classes which would be performed for free or for a fee. There is no dispute the IRWA provided a number of training classes for a fee and that records of registrations for these "for fee trainings" were kept by the IRWA.

Based on registration information from the Chief Financial Officer, Long prepared a written table setting forth the amounts owed for the "for fee training" through May of 2002 on June 3, 2003 and made a demand for payment. Long conducted additional "for fee training" classes after May 2002 which were not on the June 3, 2003 table. Long claims Munkers acknowledged that the IRWA owed him money for these "for fee trainings." Kelly Shumaker, the Chief Financial Officer, overheard Munkers say to Long in early June of 2003: "I know, I know we owe you the money but we just cannot pay you right now." On August 21, 2003, Plaintiff made a second demand for wages owed for conducting the "for fee training." On December 3, 2003, Plaintiff made another demand for the "for fee training" wages. IRWA denied each demand for payment of wages. Long claims the first time he became aware IRWA was not going to pay for the "for fee training" was September 3, 2003 when his lawyer received a letter in response to Long's August 21, 2003 demand for

MEMORANDUM ORDER - 3

payment. Up until that point, Long states had relied on Munkers statements he was going to get him paid once the income and expenses had been calculated and the IRWA had enough money to pay him.

Long became aware IRWA was having financial problems in 2003. Long made the demand for payment on June 3, 2003 and then was out of the office on vacation and work related travel until June 30, 2003. Long employment was terminated with IRWA on June 30, 2003. Munkers and another person took over the training responsibilities. Long claims the funds from the National Rural Water Association was received and deposited on June 4, 2003, so there was no financial reason to fire him.

Long claims the financial difficulties of the IRWA are pretextual and that he was terminated in violation of public policy based on certain concerns he and two other employees, Ms. Kelly Shumaker and Ms. Holt made to IRWA Board Member, Mr. Joe Qualls ("Qualls") and based on his demand for payment for the "for fee training." However, there is no evidence that Munkers had knowledge of the statements made to Qualls or that such information was taken into account in determining to terminate Long's employment.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

MEMORANDUM ORDER - 4

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM ORDER - 5

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## ANALYSIS

**1. Was Long's Discharge in Violation of Public Policy?**

Defendant argues Plaintiff was not discharged in violation of public policy as Long was an "at will" employee and could be fired at any time for no reason. Long argues he was fired based on his request for compensation he was owed and for raising concerns with a board member about the financial situation of the IRWA and so his firing was in violation of public policy.

Unless an employee is hired pursuant to a contract that specifies the duration of the term of employment or limits the reasons a person can be terminated, the employment is considered to be at the will of either party and the employer may terminate the employment with or without cause without incurring any liability. Jenkins v. Boise Cascade Corp., 108 P.3d 380 (Idaho 2005). The public policy exception to the employment at will doctrine has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations or who exercise certain legal rights or privileges. Sorensen v. Comm Tek, Inc., 799 P.2d 70, 74 (Idaho 1990). If the exception applies, the doctrine limits the employer's right to terminate the employment without

cause when the discharge would violate public policy.  Crea v. FMC Corp., 16 P.3d 272 (Idaho 2000).

Plaintiff argues that discharging Long after he demanded compensation under the alleged oral contract is in violation of public policy.  Plaintiff cites the Court to an Indiana case which deals with an employee being fired for making a worker's compensation claim.  Frampton v. Central Indiana Gas Co., 297 N.E.2d 425 (Indiana 1973).  The Court finds this case is not on point with the facts before this Court.  There is no Idaho case law cited that supports the proposition that firing an employ for seeking additional compensation is in contravention of public policy.  The Court rejects Plaintiff's argument to apply Title VII retaliation analysis to this case where Plaintiff has not raised a Title VII retaliation claim.

The Court finds as a matter of law, Long was an at will employee and his employment was subject to termination at any time for any reason.  It is undisputed that the IRWA was having financial difficulties in 2003 and that Long was aware of the financial difficulties, the need for a bridge loan, expense cutbacks, etc.  Further, Long requested his termination explanation be disclosed as being due to financial reasons in his correspondence with the IRWA after his termination.  Further, there is no evidence Munkers was aware of Long's comments to a board member when he terminated Long.  Long asked Qualls to keep his concerns confidential and the business records of IRWA indicate Qualls did not disclose Long's concerns to Munkers or the other Board of Directors prior to him being terminated.  Long wrote a letter to the Board of Directors outlining his concerns and demanding certain compensation, but this letter was not written until after his termination, so it could not have impacted the decision to terminate Long.  Nor is there any evidence Long was terminated because he refused to commit unlawful acts, performed important public obligations or

MEMORANDUM ORDER - 7

because he exercises certain legal rights or privileges. Even assuming Long was fired in part because he demanded payment for the "for fee trainings" performed in the past, this does not establish as matter of law that he was fired in violation of public policy. The motion for summary judgment on this cause of action is granted.

**2. Was There a Breach of Contract by the IRWA?**

Defendant maintains there was no meeting of the minds regarding the alleged side agreement to pay Long 50% of the proceeds from the "for fee training." Defendant also argues the statute of limitations and the statute of frauds bars Plaintiff's claims. Plaintiff maintains there was an oral contract that was reaffirmed by Munkers regularly and regardless if the Court considers 50% of net or gross proceeds, he was entitled to payment for the "for fee training" classes he provided. Plaintiff maintains the claims are within the applicable statute of limitations.

Idaho Code Section 5-217 provides for a four (4) year statute of limitations for contract claims. Long maintains his first "for fee training" class was May of 2001. Assuming a contract existed, payment was due after the training was completed regardless of when Plaintiff gathered the financial information to support his demand for payment. The complaint in this matter was filed on June 23, 2005. Accordingly, any "for fee training" completed under the alleged contract prior to June 23, 2001 is time barred. "For fee training" classes taught after June 23, 2001 are within the applicable statute of limitations.

Defendant next argues the breach of contract claims should be dismissed based on the statute of frauds doctrine. The statute of frauds requires that a contract not capable of being completed in one year and worth more than $500 to be in writing. Plaintiff responds that this contract was fully

MEMORANDUM ORDER - 8

capable of being completed in one year because the IRWA continued to promise Long he would be paid when Long asked Munkers about his payment and the partial performance of the employment contract by Long takes the agreement outside the statute of frauds.

Idaho Code § 9-505 provides for a contract that by its terms is not to be performed within a year from the making to be in writing. In the present case there was no set term of employment for Long. Long was an employee at will, so it is possible the employment contract could have been completed within one year, so the employment contract for the "for fee training" did not need to be in writing pursuant to Idaho Code § 9-505 and the statute of frauds defense is not applicable.

The next question becomes was there a meeting of the minds regarding the alleged oral contract to pay Long 50% of the proceeds for his conducting "for fee training?" In order for a contract to exist, there must be an offer, an acceptance, consideration and a mutual meeting of the minds as to the purpose and material terms of the contract. Inland Title Co. v. Comstock, 779 P.2d 15, 17 (Idaho 1998); Dursteler v. Dursteler, 697 P.2d 1244, 1247-48 (Idaho Ct. App. 1985). There is no written contract, but Long has testified in his deposition that the side agreement for additional compensation was discussed and agreed to when he was hired and it was agreed that the compensation would be in addition to his annual salary. Long states his understanding was that his share of the "proceeds" would be based upon net income from the "for fee training," although he admits the exact definition of what was meant by "proceeds" was not specifically discussed. Defendant argues that there is no evidence that the terms as presented by Long were agreed upon by Munkers. The Court respectfully disagrees. In reviewing the evidence in a light most favorable to the non-moving party, the Court finds Munkers regularly acknowledged to Long and within

MEMORANDUM ORDER - 9

earshot of other employees that money was owed to Long for the "for fee training" but that the amount needed to be calculated and/or that it would take some time for IRWA to pay the commitment back.[2] While it is true Munkers also testified in his deposition this training was included in his annual salary and his statements regarding paying Long were simply statements that he wished he could pay Long extra for the "for fee training," this testimony merely creates a genuine issue of material fact regarding whether there was a separate side agreement and is not dispositive of existence of a side agreement.

Moreover, the Court finds a reasonable jury could find the material terms of the oral side agreement are capable of being calculated based on Long's testimony he was entitled to 50% of "net" proceeds and that business records exist regarding which training was for free and which was "for fee training."

Therefore, Defendant's motion for summary judgment on the breach of contract claim is denied except for any training occurring before June 23, 2001 which are barred by the statute of limitations.

### 3. Can Plaintiff Maintain a Claim Under the Idaho Wage Claims Statute?

As an alternative cause of action, Long claims he was not fully paid pursuant to the Idaho wage loss statutes of Idaho Code 45-601, et. seq. Defendant argues any claims under this statute are barred by the doctrine of latches and is also time barred. Plaintiff argues latches does not apply based on the facts of this case and the claim for wages for the "for fee training" accrued when Long

---

[2]These facts also rebut Defendant's claim of latches as a defense as IRWA was aware of Long's claim for compensation well before the June 3, 2001 schedule was completed.

MEMORANDUM ORDER - 10

knew that his demand for payment was not going to be paid on September 3, 2003.

The Court finds the laches defense is not applicable to this case as Plaintiff claims he was regularly told by Munkers that he would be paid once the income and expenses had been determined and Long diligently tried to get the accounting information but did not have access to such information until the new chief financial officer reentered data and straightened out the books for the IRWA.

Idaho Code 45-614 sets forth two statute of limitations:

> Any person shall have the right to collect wages, penalties, and liquidated damages provided by law or pursuant to a contract of employment, but any action thereon shall be filed with the department or commenced in a court of competent jurisdiction within two (2) years after the cause of action accrued, provided however, that in the event salary or wages have been paid to any employee and such employee claims additional salary, wages, penalties, or liquidated damages, because of work done or services performed during his employment for the pay period covered by said payment, any action therefor shall be commenced within six (6) months from the accrual of the cause of action.

Generally, a cause of action accrues under this section when an employee has a right to collect the wages that are allegedly owed to him. Johnson v. Allied Stores Corp., 679 P.2d 640, 644 (Idaho 1984). In the case of an employment agreement with no time fixed for payment of wages earned, "the wages became due when the services had been rendered." Anderson v. Lee, 386 P.2d 54, 55 (1963) (citing 35 Am. Jur., Master and Servant, § 73; 56 C.J.SA. Master and Servnat § 119b; Annotation 2 A.L.R. 522).[3] An action is commenced when the plaintiff files the lawsuit or files a claim. Johnson at 644-45. While Defendant contests the oral agreement, it is undisputed there was

---

[3]As to any claim for additional wages besides the "for fee training" wages, the Court finds such claim would clearly be barred by the statute of limitations which requires such a wage loss claim to be filed within six months from the accrual of the cause of action. Idaho Code § 45-614.

MEMORANDUM ORDER - 11

no fixed time for payment of the additional wages for the "for fee training." Accordingly, absent an exception, the wages would have become due when the training classes were completed.

Plaintiff claims an exception to the general rule when he argues that Defendant should be estopped from claiming the statute of limitations defense citing the Court to Gilbert v. Moore, 697 P.2d 1179 (Idaho 1985) and that under the two year statute of limitations the action is timely filed. In the case at bar, Long made a written demand for payment within two weeks of the Chief Financial Office providing him with the income and expense information for the "for fee training" classes through May 2002. This was in early June of 2003. Before that time, Long claims he was relying on Munkers oral representations that payment would be made. Long claims he did not know his employer was not going to pay the wages due until September 3, 2003 when the employer denied his lawyer's demand for payment after he had been terminated. The Court finds the crucial factor for determining the applicable statute of limitations is the accrual date of Long's claims.

In Gilbert, the employee was hired pursuant to a one year school year contract that ran from August 1982 to August 1983. Gilbert had uncompensated overtime due to work in October, November and December of 1982. The court determined that the employer could pay the compensation anytime during the contract period, so Gilbert's claim did not accrue until the end of the contract period when "he knew that he would not be compensated for the unpaid overtime." Id. at 1181. Since his lawsuit was filed in November 1983, it was timely under the six month or the two year statute of limitations so the Court did not address which statute of limitations applied to the accrual date of August 1983. While the court disagreed the six months statute of limitations applied to the date the overtime was worked, the court did not specifically find which statute of limitations applied to the accrual date at the end of the contract period. Id. at 1181. Alternatively, the Gilbert

MEMORANDUM ORDER - 12

court held the employer was estopped from raising the statute of limitations defense as the employee reasonably relied on his supervisor's representation the overtime would be paid or he could would be compensated with additional time off work. Id. at 1181-82.

Under this theory of estoppel, it does matter whether the Court determines the applicable statute of limitations is six months or two years. If the Court allows Plaintiff's estoppel argument and finds the cause of action accrued on September 3, 2003, when Long's reasonable reliance on past promises of payment ended, then the wage claim would only be barred if the six month statute of limitations applies as the lawsuit was filed in June 23, 2005. If the two year statute of limitations applies from the September 3, 2003 accrual date, then the lawsuit would be timely filed.

Defendant argues the six month statute of limitation is applicable as Long is seeking additional wages for the "for fee training." The Court finds this is an oversimplification of the application of the statute. As stated earlier, the statute sets forth two different statutes of limitations. The case law seems to make a distinction if the claimed additional wages were being paid "on account" and/or for services performed for a specific pay period. If the wages were due "on account" but not for a specific pay period then the two year statute of limitations applies from the accrual date. See Anderson v. Lee, 386 P.2d 54 (1963). In Anderson, the plaintiff claimed he was due additional wages from his employer. The defendant admitted the employment agreement and generally to the hours worked, but disagreed regarding the hourly wage to be paid. The Court held the two year statute of limitation applied because while the plaintiff was seeking "additional wages" he was not seeking additional wages "for the pay period covered by said payment" so the two year statute of limitation applied. In Anderson, there was "no settlement or accounting between the parties; that the payments made had no direct relation to hours worked, but were merely payments

MEMORANDUM ORDER - 13

on account, the amount of each payment being determined by the amount of money needed and requested by the plaintiff at a time each payment was made." Id. at 55. The two year statute of limitations applied as the plaintiff in Anderson was seeking the unpaid balance applicable to the entire "on account" term of employment. Id. at 56. Also see, Thomas v. Ballou-Latimer Drug Co., 442 P.2d 747 (Idaho 1968) (bonus owed was not tied to specific pay period so two year statute of limitation applied to wage claim based on Anderson).

In Hutchinson v. Anderson, 950 P.2d 1275 (Idaho Ct. App. 1997), the court of appeals held if the wages were earned "on account" instead for a specific pay period, then claim does not accrue until the end of the "on account" employment period, but the six month statute of limitation applies as the unpaid wages could be linked to a specific pay period based on the record of hours worked.[4] If the additional wages were due per a specific pay period and not "on account," then the six month statute of limitations applies. See Smith v. Micron Electronics, Inc., 205 US Dist LEXIS 2990 (2005). There is no extension of this statute of limitations due to a discovery exception. Callenders, Inc. v. Beckman, 814 P.2d 429 (Idaho 1991).

In the present case, the Court finds the additional wages claimed by Long are clearly tied to the specific pay period the "for fee training" was provided. Like the recorded hours in Hutchinson,

---

[4]In Hutchinson the court states "the district court found the brothers were paid on an account basis," but then the court goes on to apply the six month statute of limitation and find the action timely. 950 P.2d at 1280. This seems confusing at first glance, but it appears to this Court that the six month statute of limitation was applied by the Idaho Court of Appeals based on the district court's determination the Hutchinson brothers had recorded their time on time sheets and individual notebooks, so the additional wages sought were linked to specific pay periods and the six month statute of limitations would then apply. The court found the "agreement for the entire term of the employment relationship" was an hourly wage agreement and the fact that the "on account" date extended the accrual date until the date the employees were terminated instead of when the claimed wages were actually earned during the employment period. 950 P.2d at 1278.

MEMORANDUM ORDER - 14

Long kept detailed records regarding his "free training" and his "for fee training." Moreover, the business has business records regarding the dates of the training provided by Long. While Long received a regular salary, there was no pattern of paying "on account" for the "for fee training." However it is at least arguable based on the record before this Court that Long had an oral "on account" agreement to be paid for the "for fee training" services he provided at the end of his term of employment. The "on account" agreement only extends the accrual date to the end of the employment period, it does not determine the applicable statute of limitations. In this case, the Court is considering the accrual date extended beyond the employment term to the date Long's reliance on statements he would be paid no longer could reasonably be maintained. The Court finds the facts of this case are more similar to the Hutchison factual situation than the Anderson factual situation. Therefore, even assuming the accrual date for the alleged unpaid wages for the "for fee training" was extended based on Long's reliance on Munkers alleged statements he would be paid, that reliance ended on September 3, 2003 and Long had six months to file his claim under Idaho Code § 45-614. Since the claim was not timely filed, the Idaho wage claim must be dismissed.

**4. Can Plaintiff Claim under Idaho Code § 44-1502 that the IRWA failed to pay the Plaintiff an Appropriate Minimum Wage?**

Plaintiff argues that when his total time worked is considered, he was not paid an equivalent to the applicable Idaho minimum wage. Defendant claims Plaintiff has failed to produce documents to support this claim. The Plaintiff did not address this argument in its response to the motion for summary judgment. In reviewing the record, the Court finds Long was aware of the IRWA's exempt status determination on his position and he failed to complain about his status or ever request

MEMORANDUM ORDER - 15

overtime payment. Moreover, Long does not provide any factual support for ths claim and it is undisputed that Long earned an annual salary of $37,000 to $44,000 while working for the IRWA. Accordingly, the Court finds as a matter of law Plaintiff is not entitled to a claim under Idaho Code § 44-1502 and the claim is dismissed.

**5. Can Plaintiff Maintain a Claim Under the Fair Labor Standards Act ("FLSA")?**

In another alternative argument for damages for the failure to pay for the "for fee training," Plaintiff seeks a minimum wage of $5.15 per hour for each hour that he conducted "for fee training."[5]

The statute of limitations for an FLSA claim is set forth in 29 U.S.C. § 255(a):

Any action . . .to enforce any cause of action for unpaid minimum wages, unpaid overtime or liquidated damages . . .
(a) . . . shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation maybe commenced within three years after the action accrued; . . . .

Assuming for purposes of this motion that a contract existed for the "for fee training," Defendant argues that the federal claim accrues when the employer fails to pay the required compensation and Plaintiff has a separate cause of action for each training that went unpaid. See 29 C.F.R. § 790.21(b); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993). Therefore, Defendant argues any of Plaintiff's claims that arose more than two years prior to the filing of the complaint on June 23, 2005 are time barred. Plaintiff argues the federal wage claim is timely for the same reason presented for the Idaho wage claim to be timely; the claim did not accrue until the employee

---

[5]Defendant argues in its reply brief that Plaintiff is not entitled to a double recovery. The Court agrees. If Plaintiff can prove a contract existed, he is only entitled to recover once for his alleged damages.

MEMORANDUM ORDER - 16

could no longer rely on employer's promise to pay and Plaintiff knew the employer was not going to pay the wage claim. Plaintiff also appears to argue in his brief that the failure to pay by the IRWA was intentional and therefore the three year statute of limitations applies for the IRWA's willful violation of the FLSA.

The FLSA requires that an employer shall pay each employee an minimum wage set by the Act. 29 U.S.C. § 206. The FLSA provides for private enforcement for the recovery of unpaid minimum wages, unpaid overtime compensation and liquidated damages. FLSA claims are continuing claims and a separate cause of action accrues each payday that wages are not paid. Beebe v. United States, 640 F.2d 1283, 1293 226 Ct.Cl. 308 (1981).

"The determination of willfulness is a mixed question of law and fact." Alvarez v. IBP, Inc., 339 F.3d 894, 908 (9th Cir. 2003). To establish willfulness, the plaintiff must show that the IRWA knew its conduct violated the FLSA or the IRWA showed reckless disregard for whether it complied with the FLSA. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Mere negligence does not rise to the level of actions being considered willful. Id. at 133, 135. Defendant contends that Plaintiff has not alleged an intentional violation of the FLSA. Plaintiff claims in his responsive brief that: "Mr. Long's complaint alleges facts sufficient to find that the IRWA knowingly allows Mr. Long's position to continue to go unpaid. That is a sufficient ground to find that the IRWA intentionally violated the FLSA." This response by Plaintiff is insufficient to rebut Defendant's argument. In response to a motion for summary judgment, Plaintiff must set forth "specific facts showing there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(c)). Citing to the alleged facts in the complaint do not meet this burden. Moreover, Long was considered an exempt employee and was

paid regularly his pro rata share of his annual salary, so the only alleged payments not made were the ones regarding the contested side agreement regarding "for fee training." The fact the side agreement is contested simply does not support the IRWA acted willfully in not paying Long a minimum wage under the FLSA. Accordingly, the Court will apply the two year statute of limitations to the FLSA claims.

The issue of the accrual date of the claims again impacts the Court analysis. Plaintiff claims the equitable estoppel doctrine applies to toll the statute of limitations under the FLSA until the date Plaintiff could no longer reasonably rely on the employer's alleged promises of payment. The Court agrees.

Although Defendant is correct in stating the general rule that the federal claim accrues when the employer fails to pay the required compensation and Plaintiff has a separate cause of action for each training that went unpaid, this general rule does not acknowledge that equitable tolling "is read into every federal statute of limitation." Holmberg v. Armbrecht 327 U.S. 392, 397 (1946). In this case, the concept of equitable estoppel may be more appropriate than equitable tolling since Plaintiff is requesting tolling of the accrual date due to the actions of the defendant. See Leong v. Potter, 347 F.3d 1117, 1123 (9th Cir. 2003); Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995). "A misrepresentation, if proven, equitably tolls the statute of limitations even if it was not made negligently or fraudulently." Kamens v. Summit Stainless, Inc., 586 F. Supp. 324 (D.C. Pa. 1984). Accordingly, the FLSA claims would be tolled until September 3, 2003, when Plaintiff learned the IRWA was not going to pay for the training. Plaintiff filed the FLSA cause of action within two years so the FLSA claim would be timely filed.

The Court further finds there are genuine issues of material fact regarding whether the IRWA

violated the FLSA. First, was there a contract for the "for fee training" and/or was Plaintiff compensated for such training via his annual salary which appears to have provided a minimum wage to Plaintiff for his hours worked and Plaintiff did not contest his exempt overtime status.

## ORDER

Being fully advised in the premises, the Court hereby orders that Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED IN PART AND DENIED IN PART consistent with this Memorandum Decision and Order. Summary judgment is granted in Defendant's favor on all state law claims except for the breach of contract claims after June 23, 2001. Summary judgment on the federal FLSA claim is also denied.

DATED: **March 29, 2007**

*/s/ Edward J. Lodge*

~~Honora~~ble Edward J. Lodge
U. S. District Judge